HAMM v. STATE.

4534                                      214 S. W. 2d 917

Opinion delivered November 22, 1948.

*Ralph Morrow,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

SMITH, J. Appellant was found guilty of the crime of rape, and was given a life sentence in the penitentiary and this appeal is from that judgment.

This case is companion to the recent case of *Palmer* v. *State,* 213 Ark. 956, 214 S. W. 2d 372, where the circumstances under which the crime was committed are recited. In the Palmer case, *supra,* one of the principal questions involved was the admissibility of an alleged confession made by Palmer. In the instant case there was no confession, but the woman assaulted identified appellant as her assailant.

It is strongly urged that the identification was not sufficiently definite to sustain the conviction. Upon the question of identification, the testimony here, as in the Palmer case, is that on the night of October 19, 1947, the prosecuting witness and her male companion were riding in an automobile and stopped when a tire sustained a puncture. The woman remained seated while the man got under the car to inspect the tire. At that time two Negro men, armed with pistols, approached them and robbed them. This statement is copied from the opinion in the Palmer case, and the same testimony was offered in the instant case. The Negro men ostensibly offered to assist in changing the tire, and in so doing Palmer held a flashlight which enabled the woman assaulted to see appellant's face "plain, very plain." She testified that while being assaulted she saw appellant's face distinctly, and that she is not mistaken and cannot be as to his

identity. She testified that when she saw appellant in the jail she recognized his voice. Now the woman's companion was unable to identify positively either of the Negroes except as to their size and build, but he did not have the same opportunity to see appellant that the woman assaulted had. The truth of her testimony was of course a question for the jury, but in view of her identification in a manner positive and unequivocal, we cannot say that appellant's identity as her assailant was not sufficiently proved.

It is insisted that proof of force was not shown. It is recited in the Palmer case, *supra,* and the same testimony was offered in the instant case that "while Hamm (appellant) held the man at the point of a gun Palmer raped the woman. Then Palmer held the gun on the man while Hamm raped the woman. In each instance her resistance was overcome by fear of the firearm." It is true the woman made no outcry. But the person who might otherwise have come to her rescue was restrained at the pistol point. The woman testified that she was in great fear, and well she may have been, for no experience could be more terrifying. It was said in the case of *Threet* v. *State,* 110 Ark. 152, 161 S. W. 139, that: "If she (the woman assaulted) failed to resist, or to make outcry, because she feared for her safety, the crime was against her will and was rape."

The defense interposed was that of an alibi and if this testimony had been believed it showed that appellant was not at the scene of the crime at the time of its commission. The principal testimony in support of this defense was given by Lela Keown, whose testimony was that appellant was with her at the time the testimony shows the crime was committed, which was near, or shortly after midnight. The witness testified that she and appellant were engaged to be married, and her testimony evidently was not believed. In the cross-examination of this witness and of appellant as well, a circumstance was developed which was not without significance. It was appellant's custom to spend Sunday afternoon with his fiancee. He did not spend the Sunday afternoon following the commission of the crime with

her, for the reason given her by appellant that he had gotten his trousers dirty sitting around, and he had them at the cleaners and did not have another pair to wear.

A new trial was asked upon the ground of newly discovered evidence. The basis of this motion was that the Prosecuting Attorney was in possession of evidence which would have shown that one Harrison Mayes, and not appellant, was one of the men who robbed and assaulted the prosecuting witness. In an attempt to get the proof of this exculpatory evidence, appellant filed a motion that a subpoena *duces tecum* be issued, requiring the Prosecuting Attorney to produce his information into court, and to sustain this motion he made affidavit on information and belief that this information would exonerate him.

After hearing such testimony as appellant cared to offer, the court overruled the motion for the reason stated that: ''However, the records (which appellant sought to have produced) would be of no value upon the consideration of the motion for new trial inasmuch as the Court has found that the matter which is sought to be revealed by the motion would be inadmissible in evidence either for or against this defendant.''

Appellant was questioned by the Prosecuting Attorney after his arrest, and his answers were taken down by the Prosecuting Attorney's stenographer. These statements were not in the nature of a confession. On the contrary, they were a denial of guilt. But appellant as a witness undertook to account for his whereabouts on the night of the crime, and particularly as to the time when he returned home that night. The stenographer was called to read her notes in contradiction of the testimony given by appellant at the trial. It is permissible always to impeach the testimony of a witness by showing that he had previously made statements in conflict with his testimony. The use of her notes by the stenographer was merely a means of refreshing her memory, as to appellant's prior statements. She could have testified as to the statements whether she had stenographically reported them or not.

It is finally insisted that the jury must have been uncertain or not entirely satisfied as to appellant's identification for the reason that he was given only a life sentence, whereas Palmer, his companion, was given a death sentence. This is the converse of the argument made in the Palmer case, who sought the modification of his death sentence because appellant had been given a life sentence. We disposed of that contention in the Palmer case by saying: "The Arkansas law allows the trial jury to determine the punishment in rape cases at either death or life imprisonment; and the punishment allotted to Palmer was within the limits allowed by law." So here, appellant has been given a sentence allowed by law, which could not have been given except upon a finding by the jury that appellant's guilt had been established beyond a reasonable doubt, as required by the instructions of the court to the jury.

If the testimony of the woman assaulted is true, appellant's guilt was established beyond a reasonable doubt, and as no error appears in the record, the judgment must be affirmed and it is so ordered.