Stephen Wayne CLAY *v.* STATE of Arkansas

CR 86-71 716 S.W.2d 751

Supreme Court of Arkansas
Opinion delivered September 29, 1986

*Hale, Ward, Young, Green & Morley*, by: *Milas H. Hale*, III, for appellant.

*Steve Clark*, Att'y Gen., by: *William F. Knight*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant was convicted of rape, burglary, and harassing communication. The facts surrounding the crimes are set out in detail because the sufficiency of the evidence is questioned.

The prosecutrix's alarm clock sounded at 5 a.m. As she

started to get up, an intruder hit her in the mouth and threatened to kill her if she screamed. He put one hand on her throat and, with his other hand, removed her underclothing. He then raped her a total of five times; first, by forcible sexual intercourse; second, by forcing her to perform fellatio; third, by anal intercourse, and the fourth and fifth times, by forcible sexual intercourse. The prosecutrix did not get a direct view of her attacker's face but was able to give a physical description of him and to describe his clothing, including a grayish green t-shirt and spectator type shoes. Police officers testified that when they arrived at her home at 6:45 a.m. she was distraught, shaken, and showed signs of injury to her face. The examining medical doctor found evidence consistent with the prosecutrix being forcibly raped. That evidence included sperm, a contusion, a bruise, and soreness in her neck and arms. The doctor utilized a sexual assault evidence collection kit for taking evidence. The police took latent fingerprints at the prosecutrix's home.

Late that evening, the prosecutrix looked at a photographic line-up assembled by the police and picked out someone other than appellant as her attacker. That person's fingerprints did not match the latent prints found at the scene.

Three weeks later the prosecutrix began receiving alarming telephone calls. For example, on one occasion the caller said: "Hi, . . . (vulgar). I'm coming back to get some more . . . (vulgar)." The prosecutrix recognized the voice as that of her attacker. An electronic tracing device was placed on the prosecutrix's phone, and it was discovered that the calls were coming from the home of Willie Clay, who is appellant's father. Appellant lived in his father's home at the time. The police then went to the home and found appellant. They immediately notice a pair of spectator type shoes and found a grayish green t-shirt.

The prosecutrix identified the shoes and shirt as those worn by her attacker. She identified appellant in a police line-up and positively identified him in court.

Appellant's fingerprints were compared with those found at the scene, and they matched. A forensic serologist testified that appellant's blood group and secreter status were consistent with that found in the vaginal smear slide, the vaginal swabs, and the vaginal washings, which were part of the sexual assault evidence

kit utilized by the doctor.

The evidence is sufficient to sustain the convictions on all three charges. The prosecutrix gave direct testimony that appellant unlawfully entered and remained in her house for the purpose of committing rape. The testimony proved all of the elements of burglary. *See* Ark. Stat. Ann. § 41-2002 (Repl. 1977). The positive eyewitness testimony of the prosecutrix alone was sufficient to sustain the guilty verdict. *Pridgett* v. *State*, 276 Ark. 52, 631 S.W.2d 833 (1982). In addition, appellant's fingerprints were found at the scene.

■ The prosecutrix gave direct testimony that the appellant engaged in sexual intercourse and deviate sexual activity with her by forcible compulsion. The testimony proved the elements of rape. *See* Ark. Stat. Ann. § 41-1803 (Repl. 1977). In a rape prosecution the positive identification of a defendant by a prosecutrix alone is sufficient evidence to sustain a conviction. *Hamm* v. *State*, 214 Ark. 171, 214 S.W.2d 917 (1948). In addition, the medical evidence, the fingerprints, and the telephone calls constituted corroborating evidence.

■ To sustain a conviction for harassing communications there must be substantial evidence to show that a person, with the purpose to harass, annoy, or alarm another person, contacts that person by telephone in a manner to harass, annoy, or alarm. Ark. Stat. Ann. § 41-2910(1)(a) (Repl. 1977). The testimony of the prosecutrix proved all of the elements of the crime. In addition, the records of the electronic tracing device corroborated her testimony.

■ Appellant next charges that the trial court erred in refusing to grant a mistrial when, after the trial had commenced, a juror told the trial judge that he knew the prosecutrix. The juror stated that the prosecutrix had spoken to him during the lunch hour and that, after reflection, he had recalled meeting her three or four years earlier as he repaired a typewriter at a bank where she worked. He stated that he had not seen her since that time and that he could be a fair and impartial juror. There simply is no showing that the juror was biased. The trial court did not abuse its discretion in refusing to grant a mistrial. The facts of the case at bar show an innocent failure to initially recognize the victim, and are clearly distinguishable from those cases where a juror

intentionally gave false information during voir dire. *See, e.g., B&J Byers Trucking, Inc.* v. *Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984).

■ Appellant next contends that the trial court erred in denying his motion for continuance in order to change attorneys. Again, the argument is without merit. The refusal to grant a continuance rests within the discretion of the trial court, and the decision will not be overturned absent a showing of abuse of that discretion. *Thorne* v. *State*, 269 Ark. 556, 601 S.W.2d 886 (1980). Here, the original attorney appeared with appellant at plea and arraignment. Appellant said nothing about changing attorneys. The same attorney appeared with appellant at a later hearing, and appellant said nothing about any problems with counsel. Then, just before the trial, appellant decided he wanted a different attorney and a delay. The trial court ruled:

> This court denies the request to change counsel at the last moment unless new counsel can go forward without a delay in the court. These requests are made on a regular basis and it's my experience that to allow a continuance because this defendant wants to change counsel will result in nothing being tried. Many of these are done at the last moment for delay.

■ The trial court was correct. Once competent counsel is obtained, the request for a change in counsel must be considered in the context of the public's interest in the prompt dispensation of justice. *Leggins* v. *State*, 271 Ark. 616, 609 S.W.2d 76 (1980). Here, there was no showing that a substitute attorney had even been contacted, much less that some unknown attorney could go forward without undue delay.

Appellant's final argument is that the prosecutor's use of peremptory challenges to remove two black jurors prevented him from having a jury of his peers. We find no merit in the argument in this case, but, because some of our past holdings on the subject are now constitutionally questionable, we desire to discuss the point in some detail. *Batson* v. *Kentucky*, ___ U.S. ___, 106 S. Ct. 1712 (1986) is now the controlling case on this subject. *Batson* overruled part of *Swain* v. *Alabama*, 380 U.S. 202 (1965). In some of our decisions we have relied on that part of *Swain* which was overruled. *See Johnson* v. *State*, 287 Ark. 98, 696 S.W.2d

742 (1985); *Conley* v. *State*, 272 Ark. 33, 612 S.W.2d 722 (1981).

 *Batson, supra*, holds that even though a prosecutor ordinarily is entitled to exercise peremptory challenges for any reason, as long as the reason is related to his view concerning the outcome of the case to be tried, the Equal Protection Clause forbids the prosecutor from challenging potential jurors solely on account of their race or on the assumption that black jurors, as a group, will be unable to impartially consider the State's case against a black defendant. The holding then provides that a defendant may establish a prima facie case of purposeful discrimination solely on evidence concerning the prosecutor's exercise of peremptory challenges in the defendant's trial. A prima facie case is made when the defendant shows that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. The defendant may also rely on the fact that peremptory challenges constitute a jury selection practice which permits persons who are of a mind to discriminate, to do so. Finally, the defendant must show that such facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen from the petit jury on account of their race. Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. The prosecutor may not rebut a prima facie showing by stating that he challenged the jurors on the assumption that they would be partial to the defendant because of their shared race or by affirming his good faith in individual selections.

The United States Supreme Court stated:

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have

confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

*Batson* v. *Kentucky*, ___ U.S. ___, 106 S. Ct. 1712, 1723 (1986).

In the case at bar no peremptory challenges were made orally; they were made by striking from a list which is not in the record. The record does not reflect the racial composition of the jury, either before or after veniremen were struck. We are told only that the prosecutor struck two black persons; that the prosecutor took "several" black persons on the jury, and that he had strikes remaining when the jury was selected. Voir dire does not imply even a hint of racial discrimination, and the record does not disclose the race of the victim.

Since there were several black persons on the panel, and the State had strikes remaining, and there is no indication of discrimination in the record, we affirm the trial court. The appellant did not show such facts and circumstances to raise the inference that the prosecutor used strikes to exclude the veniremen from the petit jury solely on account of their race.

In compliance with Rule 11(f) of the Rules of the Supreme Court and Court of Appeals, an examination of the record of all other objections has been made and no reversible error found.

Affirmed.