Huey Carnell WHITE *v.* STATE of Arkansas

CR 88-120                                           764 S.W.2d 613

Supreme Court of Arkansas
Opinion delivered February 20, 1989

*Matt Keil; Malaby & Shumaker,* by: *Rick C. Shumaker,* for appellant.

*Steve Clark,* Att'y Gen., by: *J. Brent Standridge,* Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. A Miller County jury found the appellant guilty of capital murder and sentenced him to life imprisonment without parole. On appeal, the appellant argues that there was insufficient evidence to convict him of capital murder. In addition, he argues that he was denied equal protection because of the state's use of its peremptory challenges to strike two black jurors, and that Arkansas's capital murder and first degree murder statutes overlap and are therefore unconstitutional. We affirm the appellant's conviction.

Appellant first contends the trial court erred in failing to grant his motion for directed verdict. This contention is wholly without merit. Arkansas's capital murder statute, Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1987), provides in relevant part as follows:

(a) A person commits capital murder if:

(1) Acting alone or with one (1) or more persons, he commits or attempts to commit . . . robbery . . . , and in the course of and in furtherance of the felony, or in

immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; . . .

■ Appellant concedes he joined with another, James Lee Thomas, in robbing Hamilton's AG Grocery in Stamps, Arkansas, but he argues that because he did not actually kill, or aid Thomas in the killing of, the store's clerk during the robbery, he was not an accomplice to murder. Such a contention has no basis in law. In fact, we have repeatedly held that a person need not take an active part in a murder to be convicted if he accompanies another who actually commits the murder, and he assists in the commission of the crime — in this case, the crime of robbery. *See, Shelton* v. *State*, 287 Ark. 322, 699 S.W.2d 728 (1985); *Henry* v. *State*, 278 Ark. 478, 647 S.W.2d 419 (1983); *Hallman & Martin* v. *State*, 264 Ark. 900, 575 S.W.2d 688 (1979).

■ Here, the proof reveals the appellant and Thomas both had guns, and that, during the robbery, Thomas initially struck one clerk, Delores Cockerham, and, at about the same time, appellant struck another clerk, Lori Lemay. Although appellant admits to having seen Thomas strike Cockerham once with his gun, Lemay, who had fallen to the floor and could not see, heard Cockerham being beaten repeatedly. Appellant also admitted that, after the beatings, he placed a trash can over Cockerham's head. The medical examiner related that Cockerham died from head and brain injuries because of the blows to her head. Based upon those facts alone, we have no hesitancy in concluding that the state met its burden of proving the elements of capital murder.

■ Conversely, the appellant failed to meet his burden of proving his affirmative defense under Ark. Code Ann. § 5-10-101(b). Pursuant to § 5-10-101(b), appellant contended that he did not commit the homicidal act or in any way solicit, command, induce, procure, counsel, or aid in its commission. Even if we accepted appellant's argument that he did not actually strike Cockerham, the evidence reflects that he had provided Thomas with the gun which was used to beat Cockerham and, at the very least, he assisted Thomas in Cockerham's beating by hitting Lemay, thereby preventing Lemay from going to Cockerham's aid or from obtaining help. The trial court was clearly correct in denying appellant's motion for directed verdict.

Citing *Batson* v. *Kentucky*, 476 U.S. 79 (1986), and *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987), the appellant next argues he was denied a fair trial because the state improperly exercised two peremptory challenges in striking two black jurors. The appellant is black and the decedent, Mrs. Cockerham, was white.

■■ The Supreme Court in *Batson* held that a defendant who could make a prima facie case of purposeful discrimination shifts the burden to the state to prove the exclusion of jurors is not based on race. In *Ward*, we explained that such a prima facie case may be made (1) by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) by demonstrating total or seriously disproportionate exclusion of blacks from any jury venires, or (3) by showing a pattern of strikes, or questions and statements by a prosecuting attorney during voir dire. *Ward*, 293 Ark. at 92-93, 733 S.W.2d at 730. Appellant has shown none of the foregoing prerequisites.

After the court initially excused seventeen jurors for cause from the original panel, the appellant and the state had fifty-three persons left on the venire, five of whom were black. The court excused one of these five prospective jurors for cause because she had talked to others about the case and her views had become prejudiced. As a consequence, only four prospective black jurors remained on the panel at the time the attorneys began using their peremptory challenges. One of the remaining four veniremen was seated as a juror although the state had peremptory challenges remaining. The state did peremptorily challenge the three remaining black veniremen, but the appellant only questioned two of them. The two prospective jurors, Mr. Junious Lindsey and Mr. Ed Trotter, were challenged by the state after both men expressed reluctance to impose the death penalty. Appellant points to nothing in the prosecutor's actions and voir dire of these two black men that would lead us to believe the prosecutor acted with purposeful discrimination in striking Trotter and Lindsey. While not conceding that appellant had made a prima facie case of discrimination, the prosecutor stated on record that the two prospective jurors were striken because of their responses to the questions posed to them concerning the death penalty.

■ As was true in *Ford* v. *State*, 296 Ark. 8, 753 S.W.2d

258 (1988), the record here reflects that after the jury was seated—including the one juror of appellant's race—the state had peremptory challenges remaining. No discriminatory purpose can be attributed inferentially or directly to the state because of its actions in striking the two jurors in this cause. Neither does the appellant show a disproportionate exclusion of blacks from the venire from which the state and appellant were required to select a jury. Accordingly, we hold the appellant failed to establish a prima facie case of discriminatory purpose as is required in *Batson.*

In his final point appellant urges that Arkansas's capital murder statute is unconstitutional because it overlaps the requirements or elements contained in the state's first degree murder statute. This court has already decided this issue contrary to the appellant's argument. *See Cromwell* v. *State*, 269 Ark. 104, 598 S.W.2d 733 (1980). In *Cromwell*, the defendant insisted that Arkansas's capital murder and first degree murder statutes overlapped and were void for vagueness, because the prosecuting attorney or the trier of fact may arbitrarily decide whether an accused is to be charged with or convicted of capital murder, a capital offense, or murder in the first degree, punishable by imprisonment only. This court held that it found no constitutional infirmity in the overlapping of the two statutes because there is no impermissible uncertainty in the definition of the offenses. The court explained first that it was impossible to avoid the use of general language in the definition of offenses and that the prosecutor or grand jury is often compelled to choose one or two or more offenses, no matter how precise the statute might be. As an example, the court noted that one or the other offense may be established depending upon the credibility or conflicting testimony of witnesses. The court further reasoned that the wording in the first degree murder statute may have been chosen to lighten the possible punishment that might be imposed for conduct falling within the strict definition of capital murder—a consequence that might be acceptable both to the prosecution and to the defense. We reaffirm our decision in *Cromwell* and hold Arkansas's capital murder and first degree murder statutes to be constitutional.

In accordance with Ark. Sup. Ct. R. 11(f), we have examined the record of the proceedings and have determined that

there are no other rulings adverse to appellant which resulted in prejudicial error. For the reasons set out above, we affirm the trial court's rulings and judgment.