John W. SELLERS *v.* STATE of Arkansas

CR 89-84                                          778 S.W.2d 603

Supreme Court of Arkansas
Opinion delivered October 30, 1989

*Allen & O'Hern*, by: *Arthur L. Allen*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. This is the second appeal of John W. Sellers who has been twice convicted of capital murder and sentenced to life imprisonment without parole. Sellers was charged with capital felony murder with burglary as the underlying felony. At the earlier trial, assault and battery were the offenses the jury was allowed to consider as those Sellers intended to commit upon entry of the victim's dwelling. We held it improper to have allowed the jury to consider burglary as the underlying felony with assault and battery as the purposes of the entry into the victim's dwelling because the assault and battery were not separate from the murder, and thus the first conviction was reversed. *Sellers* v. *State*, 295 Ark. 489, 749 S.W.2d 669 (1988). Sellers contends our first reversal amounted to a finding of insufficient evidence and thus he has now been twice placed in jeopardy, citing *Burks* v. *United States*, 437 U.S. 1 (1978). We find a distinction between insufficiency of the evidence to prove the offense charged and insufficiency of the evidence the jury was allowed to consider, and thus we cannot agree with the argument. Neither can we agree with his contentions that the evidence was insufficient on retrial or that the court erred in allowing a witness who had asserted his fifth amendment right to be examined. We also find no error in the court's refusal to find the capital murder statute unconstitutional or in the admission of the statement made by Sellers into evidence. The conviction is thus affirmed.

At the second trial, Sellers was again charged with murder committed in the course of burglary. Testimony showed that the body of William Byrd, an elderly man who lived alone and who was known to keep large sums of money, was found in his home by Preston Parker, the husband of Byrd's niece. Parker testified that he touched Mr. Byrd's leg but saw no signs of life in him. There was blood splattered in several rooms. Sellers paid a friend to take him to Oklahoma apparently shortly after the killing took place. The sheriff took custody of Sellers after he had been arrested in Las Vegas, Nevada, and Sellers made a statement.

In his statement, Sellers detailed the events surrounding the killing. He and two others had gone to Mr. Byrd's home to rob him. Sellers was to strike Byrd in the face, and the others were to

take the money. One of the three carried an axe handle. Sellers said he hit the victim with his hand, as planned, but then left when dogs began to bark. His accomplices then came back to the car where he was waiting. They had Mr. Byrd's trousers and billfolds which contained money, several thousands of dollars, which was divided among the three of them. Sellers answered affirmatively when asked whether he and the others had patted the victim down searching for his money.

### 1. Sufficiency of the evidence

#### a. Mens rea

Sellers contends the evidence was insufficient to show that he intended to murder Byrd. Intent to kill is not an element of the offense charged. The relevant part of the statute pursuant to which Sellers was charged, Ark. Code Ann. § 5-10-101 (Supp. 1987), provides:

(a) A person commits capital murder if:

(1) Acting alone or with one (1) or more other persons, he commits or attempts to commit . . . burglary, . . . and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; . . . .

Sellers admits he struck Mr. Byrd in the head, but he contends he did not strike the fatal blow. By his own admission Sellers assisted in the commission of the burglary. To be convicted of murder, it is not necessary that the accused be proven to have taken an active part in the killing as long as he assists in the commission of the underlying crime. *White* v. *State*, 298 Ark. 55, 764 S.W.2d 613 (1989). *See also Henry* v. *State*, 278 Ark. 478, 647 S.W.2d 419 (1983); *Hallman* v. *State*, 264 Ark. 900, 575 S.W.2d 688 (1979).

#### b. Corpus delicti

The state was obligated to prove beyond a reasonable doubt that Mr. Byrd was killed and that he was killed by someone other than himself. *Hays* v. *State*, 230 Ark. 731, 324 S.W.2d 520

(1959). We find the evidence given by Parker to the effect that Mr. Byrd showed no signs of life when he was found in his blood splattered home, coupled with the sheriff's testimony that, after having been summoned by Parker, he observed blood coming from Mr. Byrd's ear and a gash on his forehead, along with Sellers' statement that he knew one of his accomplices carried a homemade axe handle into Mr. Byrd's dwelling when the burglary occurred, is sufficient to satisfy the requirement.

## 2. Double jeopardy

Sellers argues he was retried for an offense the prosecution failed to prove in the first trial and that his retrial violated the prohibition against double jeopardy found in the Fifth Amendment and discussed by the Supreme Court in *Burks* v. *United States, supra.*

In the *Burks* case it was held that a state may not retry one against whom it has failed to produce sufficient evidence for conviction. However, the Supreme Court clearly distinguished the case of insufficient evidence from a case in which there was only trial error. The difference was further elaborated in *Montana* v. *Hall*, 481 U.S. 400 (1987). The case before us was reversed because of trial error rather than insufficiency of the evidence.

The evidence in the first trial was virtually the same as in the second trial. The problem with the first conviction was that the court, at the request of the prosecution and for reasons explained in the first opinion of this court in this case, instructed the jury it could convict Sellers of murder with burglary as the underlying felony if it found he entered Byrd's dwelling for the purpose of committing assault and battery. We held that, because the murder was the culmination of the assault and battery and could not be separated from it, a burglary, committed by entering for the purpose of committing assault and battery, could not be the underlying felony supporting a capital murder conviction.

In the second trial, the jury was instructed it could find Sellers guilty of capital murder if it found the killing occurred during a burglary consisting of unlawful entry of Mr. Byrd's home for the purpose of committing theft. The instruction was

proper.

We have no doubt the evidence was sufficient at the first trial to show Sellers unlawfully entered the dwelling with the purpose of committing theft, just as it was sufficient in the second trial. The difference is that the jury was allowed to consider it in the second trial, and thus the verdict this time was proper.

### 3. Witness and the Fifth Amendment

Donald McDougald, one of those Sellers said was with him on the night the crime was committed, was called by the prosecution as a witness. He took the stand and said he had not promised to testify. The prosecutor asked if he had accompanied the sheriff to a place where "an object" was found. At that point, McDougald said he would rather not testify, asserting his rights under the Fifth Amendment. The prosecutor then said: "You don't remember—you don't want to admit to whether you did that or not?" Defense counsel objected to the prosecution continuing to question after the right not to testify had been asserted, and a hearing was held away from the jury. The prosecutor stated he did not know whether McDougald would assert his privilege until McDougald took the stand.

McDougald was offered immunity, but he informed the court he would continue to decline to testify due to the "inmate code," implying that he would be harmed by other inmates if he testified. The court declined to order McDougald to testify, but allowed McDougald to return to the stand to explain that his refusal was not because he had in any way been coerced by Sellers. The defense made no further objection to McDougald's testimony upon his return to the witness stand.

■ . We find no prejudice occurred to Sellers from this episode. McDougald said nothing which had any bearing whatever on Sellers' guilt or innocence. Even if an error was committed, and we find none, we would not reverse absent a showing that it somehow unfairly prejudiced the defendant. *Taylor* v. *State*, 299 Ark. 123, 771 S.W.2d 742 (1989); *Vasquez* v. *State*, 287 Ark. 468, 701 S.W.2d 357 (1985).

### 4. Constitutionality of capital murder statute

■ Sellers argues that the capital murder statute is unconstitutional because it overlaps with the first degree murder statute in that one may be convicted of either crime if a killing occurs in the perpetration of a felony. We have previously rejected that argument. *White* v. *State, supra; Hill* v. *State*, 289 Ark. 387, 713 S.W.2d 233 (1986).

### 5. Admissibility of Sellers' statement

■ Sellers concedes that we addressed this argument in our earlier opinion and that it is thus precluded by the law of the case.

### 6. Other errors

The record has been reviewed in accordance with Arkansas Supreme Court and Court of Appeals Rule 11(f), and we find no other error prejudicial to Sellers.

Affirmed.