William Paul SMITH *v.* STATE of Arkansas

CR 91-71                                    815 S.W.2d 922

Supreme Court of Arkansas
Opinion delivered September 23, 1991

*William R. Simpson, Jr.* Public Defender, *Thomas B. Devine III*, Deputy Public Defender, by: *Andy O. Shaw*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, William Paul Smith, urges reversal of a Pulaski County jury verdict convicting him of capital murder under Ark. Code Ann. § 5-10-101(a)(4) (Supp. 1989). The jury sentenced appellant to serve life without possibility of parole in the Arkansas Department of Correction. We affirm.

Appellant presents three arguments for reversal of his conviction. His third argument challenges the sufficiency of the evidence. We will address that argument first in accordance with our custom of addressing sufficiency of the evidence arguments prior to our consideration of other alleged trial court errors. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984).

Appellant argues that the trial court erred in denying his motion for a directed verdict because the state did not present sufficient evidence of the premeditation and deliberation elements of capital murder. We must affirm if we find substantial evidence to support appellant's conviction. *Lewis* v. *State*, 295 Ark. 499, 749 S.W.2d 672 (1988). In determining whether there is substantial evidence, we consider only the evidence that is favorable to the state and supports appellant's conviction. *Crossley* v. *State*, 304 Ark. 378, 802 S.W.2d 459 (1991).

The state's evidence showed that appellant drove to the Eastgate housing project in North Little Rock on the night of October 14, 1989. Two eyewitnesses testified that appellant parked his car, got out, and approached the victim, Michael Cooksey, from the side. The witnesses testified that Cooksey did not see appellant until appellant said, "Mike, I told you." As appellant spoke, he raised a sawed-off shotgun and fired a single fatal shot into the left side of Cooksey's face. Expert medical testimony established that the shot was fired approximately six feet from the victim. After shooting Cooksey, appellant jumped in his car and drove away.

Section 5-10-101(a)(4) defines premeditated and deliberated capital murder:

> (a) A person commits capital murder if:
>
> . . . .
>
> (4) With the premeditated and deliberated purpose of

causing the death of another person, he causes the death of any person[.]

In the instant case, we believe the state produced substantial evidence that appellant killed Cooksey with the requisite premeditated and deliberated purpose. We have recognized that premeditation and deliberation are criminal elements that are hard to prove with concrete, demonstrative evidence. *Ford* v. *State*, 276 Ark. 98, 633 S.W.2d 3 (1982). Rather, the jury may infer a defendant's intent from the circumstances of the case. *Hamilton* v. *State*, 262 Ark. 366, 556 S.W.2d 884 (1977). Relevant circumstances include "the character of the weapon used and the manner in which it was used, the nature of the wounds inflicted, the conduct of the accused and the like." *Id*. at 372, 556 S.W.2d at 888.

In the instant case, the state's evidence included eyewitness testimony and medical expert testimony. In summary, this evidence established that appellant armed himself with a sawed-off shotgun, drove to the housing projects, walked to within six feet of the victim at an angle from which the victim couldn't see, spoke the victim's name, and shot the victim in the side of the head. We believe these circumstances provide more than substantial evidence for the jury to infer appellant's premeditation and deliberation. Accordingly, we affirm the trial court's denial of appellant's motion for a directed verdict.

Appellant's second allegation of error is that the trial court abused its discretion in failing to declare a mistrial when a juror informed the court that he may have known the victim, Michael Cooksey. The juror, Mr. James Treat, came forward after the jury had been sworn and the other veniremen had been excused to tell the court that a man resembling Mr. Cooksey had inquired periodically about a job at Mr. Treat's place of employment. (The record is unclear as to how Mr. Treat knew what the victim looked like.) Mr. Treat informed the court that he did not remember the man's name, and that he could not be sure that the man was Cooksey. The court then questioned Mr. Treat about his ability to serve as an impartial juror:

THE COURT: Would that relationship with the deceased, if in fact it is the same person, have any effect on your sitting as a juror?

JURY MEMBER: No, it wouldn't affect me, Judge. I just wanted to report it.

THE COURT: I appreciate that, but do you think you couldn't serve as a fair and impartial juror, even though this is the one that approached you at your job?

JURY MEMBER: No.

The court denied appellant's motion for a mistrial.

We addressed an analogous situation in *Clay v. State*, 290 Ark. 54, 716 S.W.2d 751 (1986). In that case, a juror came forward after the trial began to inform the court that he remembered meeting the prosecuting rape victim several years earlier at her place of employment. We found no abuse of discretion in the trial court's refusal to declare a mistrial after the juror stated that his previous acquaintance with the rape victim would not affect his ability to be a fair and impartial juror. We recognized that situations involving an innocent failure to recognize the victim initially are clearly distinguishable from those cases where a juror intentionally gave false information during *voir dire. Id.*

In the instant case, we find no evidence that Mr. Treat intentionally withheld information during *voir dire*. Furthermore, assuming that the victim was the man Mr. Treat had seen at his place of employment, the information concerning the prior relationship was so tangential that we will not presume prejudice. Mr. Treat's acquaintance with the man he had seen at the work was so limited that he could not even recall the man's name. In cases such as this one, where a juror's withheld information is neither material nor intentionally withheld, we will not find that the trial court abused its discretion in refusing to declare a mistrial. *See Decker v. State*, 717 S.W.2d 703 (Tex. Crim. App. 1986) (opinion on reh'g).

Finally, appellant asserts two challenges to the constitutionality of the capital murder statute. He first argues that the statute's death penalty provision constitutes cruel and unusual punishment because of its arbitrary application. Since appellant did not receive the death penalty, he lacks standing to challenge the penalty's alleged risk of arbitrary application. *Hogan v. State*, 281 Ark. 250, 663 S.W.2d 726 (1984); *Sumlin v. State*, 266 Ark.

709, 587 S.W.2d 571 (1979).

Appellant also argues that we should declare the capital murder statute unconstitutionally vague because the elements of the offense overlap the first degree murder statute. We have previously rejected the vagueness argument regarding the overlap of capital felony murder and first degree murder. *Sellers* v. *State*, 300 Ark. 280, 778 S.W.2d 603 (1989); *White* v. *State*, 298 Ark. 55, 764 S.W.2d 613 (1989). In those cases, we held that the overlapping was constitutionally valid because there was no impermissible uncertainty in the definition of each offense. *White, supra.* We apply the same rationale to section 5-10-101(a)(4) and hold that the offense of premeditated and deliberated capital murder does not violate the constitutional prohibition of vagueness.

In accordance with Ark. Sup. Ct. R. 11(f), we have examined the record and have determined that there were no rulings adverse to appellant which constituted prejudicial error. Accordingly, we affirm the conviction.