Jessie Lee BUCHANAN *v.* STATE of Arkansas

CR 93-714                                          866 S.W.2d 395

Supreme Court of Arkansas
Opinion delivered December 6, 1993

*Davis H. Loftin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Jessie Lee Buchanan, the appellant, was convicted of capital murder for having shot and killed Alfred Tobar while they were arguing in Mr. Buchanan's home. He was sentenced to life imprisonment without parole, and he raises four points of appeal. Mr. Buchanan contends the evidence was insufficient to establish that the killing was done with premeditation and deliberation. We hold the nature and manner of use of the weapon was sufficient to support the verdict. He also contends the similarity of the capital and first degree murder statutes make the law too vague for enforcement. We have previously held to the contrary. Finally, he contends two statements made by Lilly Hodges, the only witness to the shooting, should not have been admitted into evidence. We hold the statements were admissible for the purpose of impeachment. We affirm the conviction.

### 1. Sufficiency of the evidence

Mr. Buchanan and Mr. Tobar were friends who had gotten into an argument during an afternoon outing with other persons. After Mr. Buchanan returned to his home, Mr. Tobar knocked on Buchanan's door and was allowed to enter. Despite Tobar's stated intention to apologize, the argument flared again. Lilly Hodges, Mr. Buchanan's fiance who lived with him and their two children, witnessed the shooting. She testified that she had asked Tobar to leave but he refused. At some point she called Mr. Tobar's wife a name, and he then grabbed her and threatened to hit her. Ms. Hodges testified further that Buchanan had gone to the back room of their mobile home, gotten a rifle, and then returned to the front. Ms. Hodges had by then broken free. Buchanan again asked Tobar to leave, but Tobar advanced toward Buchanan who then shot Tobar.

Mr. Buchanan did not deny the shooting. His testimony was similar to that of Ms. Hodges. She testified she heard two or three shots. Mr. Buchanan testified he blacked out after the first shot. He said he had no intention of killing Tobar but shot at him because Tobar was advancing on him and he felt fear for himself, Ms. Hodges, and the children.

The weapon used was a .22 caliber semi-automatic rifle with a sawed off stock. Ronald Andrejack, a firearms and tool-mark

examiner of the State Crime Laboratory, testified that it was nec.-essary to pull the trigger of that rifle for each shot fired. Dr. David De Jong, Associate Medical Examiner with the Crime Laboratory testified that Mr. Tabor suffered five bullet wounds, two entered his front and three entered his back.

Mr. Buchanan argues that the only evidence about premeditation and deliberation came from the only two witnesses to the shooting, Ms. Hodges and himself, and that no such intent could be found as a result of their testimony. Be that as it may, we hold the jury's decision is supported by the evidence of the nature of the weapon and the manner of its use.

In determining whether there was premeditation and deliberation, the jury may consider the nature of the weapon used, the extent and location of the wounds inflicted, and Buchanan's actions. *Tillman* v. *State*, 300 Ark. 132, 777 S.W.2d 217 (1989); *Ricketts* v. *State*, 292 Ark. 256, 729 S.W.2d 400 (1987). Given the five bullet wounds, their location in Mr. Tobar's body, and the nature of the weapon used, we cannot say there was no question of fact for the jury to decide, and we have been given no convincing argument or citation of authority which might cause us to overturn its decision with respect to Mr. Buchanan's intent when he fired the fatal shots.

### 2. *Statutory overlap*

Mr. Buchanan argues that the law pursuant to which he was convicted was void for vagueness. The capital murder statute, Ark. Code Ann. § 5-10-101(a)(4) (Supp. 1993), under which Buchanan was charged, describes the offense as one committed "[w]ith the premeditated and deliberated purpose of causing the death of another person." The first degree murder statute, Ark. Code Ann. § 5-10-201(a)(2) (Supp. 1993), describes that crime as causing the death of another person "[w]ith a purpose of causing the death of another person." Mr. Buchanan's point is that the discretion given the prosecution to choose between the two similarly described crimes makes the law too vague for enforcement. It would allow different persons to be convicted of two different offenses even though their conduct had been the same.

A subsidiary contention is that, had he been charged

with first degree rather than capital murder he could have been freed on bond to assist in his defense and the discretion given to the prosecutor to charge either offense violates some unspecified constitutional mandate. The argument seems to assume that a charge of capital murder automatically obviates the possibility of the accused being freed on bond. Although the State's brief does not question the assumption, it is not correct. Arkansas Const. art. 2, § 8 (1874) provides, "All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great." The State bears the burden of showing "the proof is evident or the presumption great," and the mere fact that capital murder has been charged does not mean the offense is non-bailable. *Renton* v. *State*, 265 Ark. 223, 577 S.W.2d 594 (1979).

The only authority cited in support of the contention that the overlapping of the two statutes constitutes some sort of constitutional violation is *Cromwell* v. *State*, 269 Ark. 104, 598 S.W.2d 733 (1980). In that case the same argument was presented with respect to the so called "felony murder" provisions found in both the capital murder and first degree murder statutes. We rejected the void for vagueness argument because we found that each of the statutes in question contained no impermissible vagueness, and the fact of the overlapping of the definitions of the two crimes presented no constitutional infirmity. We said the first degree murder statute might have been intended to include an overlap with the capital murder statute.

> The actual wording of the [first degree murder] statute may have been chosen to lighten the possible punishment that might be imposed for conduct falling within the strict definition of capital murder — a consequence that might be acceptable both to the prosecution and to the defense. If that is not true in a particular case, presumably the defense can ask that the State be required to elect between the two degrees. In any event, we find no constitutional infirmity in the overlapping of the two sections, because there is no impermissible uncertainty in the definition of the offense.

Mr. Buchanan concedes that the very case he cites is contrary to his position, but he seeks to distinguish it on the basis that the felony murder situation is somehow different from the one before

us now. We disagree with the proposed distinction. We have followed the *Cromwell* rationale on a number of occasions in which the same argument has been made, *Mauppin* v. *State*, 309 Ark. 235, 831 S.W.2d 104 (1992); *Smith* v. *State*, 306 Ark. 483, 815 S.W.2d 922 (1991); *Sellers* v. *State*, 300 Ark. 280, 778 S.W.2d 603 (1989); *White* v. *State*, 298 Ark. 55, 764 S.W.2d 613 (1989), and it applies in this case as well.

### 3. Admissibility of the statements

In a handwritten statement and a separate tape recorded oral statement, both made shortly after the event, Ms. Hodges told about witnessing the homicide. In neither of those statements, however, did she say anything about being personally threatened with harm by Mr. Tabor or about his having advanced on Mr. Buchanan after Buchanan asked him to leave the scene. The State called Ms. Hodges as its witness. When her testimony went beyond facts found in her handwritten statement given to a police officer shortly after the homicide, the State introduced the handwritten statement. The defense objected that, while it omitted some facts to which Ms. Hodges had testified at the trial, it contained nothing inconsistent with her testimony.

The objection was overruled and, at that point, no admonition was given to the jury to describe the purposes for which the jury could consider the statement; however, at the conclusion of Ms. Hodges' testimony as the State's witness, the Trial Court admonished the jury that it could only consider the handwritten statement for the purpose of impeachment and not for the truth of the matters contained in it.

The objection made by Mr. Buchanan's counsel was, again, that Ms. Hodges' prior statement should not be admitted because it was not inconsistent with her testimony. Although it was not mentioned at the trial, and is not mentioned in Mr. Buchanan's brief, we assume the principle underlying the objection is the hearsay rule. We know of no rule to the effect that, to be admissible, evidence must be inconsistent with other evidence. Thus, although it was not cited to the Trial Court and is not cited in either brief, the argument apparently relates to A.R.E. 801(d) which excludes from the definition of "hearsay" a prior

statement made by the witness which is inconsistent with the witness's testimony.

We need not try to decide whether testimony which goes beyond a previous statement made by the witness is "inconsistent" with it. The reason we need not answer that question is that the statement offered by the State during Ms. Hodges' direct examination as a State's witness did not meet the definition of hearsay, and thus it matters not that it may not have been inconsistent with her testimony at the trial.

■ Rule 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The statement was not offered for the truth of the matter asserted, and the jury was properly instructed not to consider it as being offered for the truth of the matter asserted. It was offered to show that items contained in her trial testimony were not included in the statement she made to the sheriff's investigator shortly after the homicide she witnessed. The argument supported by admission of the statement into evidence was that she did not include the facts tending to exculpate Buchanan when her memory of the event must have been quite fresh. No error was committed with respect to admitting the handwritten statement into evidence.

■ Ms. Hodges also testified as a defense witness and was confronted on cross-examination with the transcript of her tape recorded statement and questions about why she had not included the information about Tabor's threatening gestures. Mr. Buchanan's counsel objected on the ground that Officer Laxton, who had taken the statements from Ms. Hodges on the night of the homicide had said the tape was an accurate representation of her oral statement but then testified that the recording inaccurately identified the place where the statement was taken as the scene of the crime rather than the sheriff's office. The prosecutor responded, correctly, that Officer Laxton had not indicated that anything said by Ms. Hodges was inaccurately recorded or transcribed. The Trial Court admitted the statement and again gave an instruction limiting its use to impeachment. Again, the transcription of the oral statement was not offered for the truth of the matter asserted, and the objection presented at the trial was properly overruled.

### 4. Rule 4-3(h)

In accordance with Arkansas Supreme Court and Court of Appeals Rule 4-3(h), the record of trial has been examined, and it has been determined that there were no rulings adverse to Mr. Buchanan which constituted prejudicial error.

Affirmed.