Jack Gordon GREENE *v.* STATE of Arkansas

CR 93-523 878 S.W.2d 384

Supreme Court of Arkansas
Opinion delivered June 20, 1994

*J.M. Holman*, Public Defender, and *Vannoy, Colvard, Triplett & McLean*, by: *Gary Vannoy*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Jack Gordon Greene, appellant, was found guilty of capital murder and sentenced to death by lethal injection. We affirm the conviction for capital murder, but hold there was prejudicial error in the sentencing phase of the bifurcated trial. We set aside the sentence of death and remand the case to the trial court for resentencing. *See* Ark. Code Ann. § 5-4-616 (Repl. 1993).

██ Appellant makes nine assignments of error. Two of the assignments involve asserted trial error in the guilt phase of the proceeding. We first address those two arguments. In the first of these, appellant contends that the trial court erred in admitting a number of photographs into evidence. The photographs comprise two groups. One group shows the victim at the scene of the crime. The abstract does not reflect that there was an objection to any of the photographs in this group. Issues not raised in the trial court will not be considered for the first time on appeal. *Moore* v. *State*, 303 Ark. 514, 798 S.W.2d 87 (1990). The other group contains photographs taken by a forensic pathologist, Dr. Fahmy Malak, the former state medical examiner. These photographs were introduced through the video deposition of Dr. Malak. While taking the video deposition, appellant's counsel objected to State's deposition exhibits numbers 1, 2, and 4 because they were "inflammatory and repetitive." It does not appear from the abstract that the objection made during the videotaping was subsequently brought to the attention of the trial court, and, as a result, the objection was waived. A matter not brought to the attention of the trial court cannot be considered on appeal. *Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990). Further, the record to be considered on appeal is confined to that which has been abstracted. *Bennett* v. *State*, 302 Ark. 179, 789 S.W.2d 436, *cert. denied*, 498 U.S. 851 (1990).

The other assignment of trial error in the guilt phase of the trial involves an evidentiary ruling admitting a tee-shirt into evidence. The proof involved in the ruling showed that while on patrol at 7:15 on the morning of July 26, 1991, Toby Taylor, a city policeman in Norman, Oklahoma, saw appellant and thought he was an escapee from a local mental institution. Taylor stopped appellant to see if he should be returned to the hospital. Appellant had on a pair of parachute pants and thongs, but did not have on a shirt. He was carrying a trash bag in one hand and a black, sleeveless tee-shirt in the other. Appellant identified himself with an Arkansas driver's license and a social security card. The officer did not detain appellant, but instead ran a check on him by police radio through the National Crime Information Center's computer system. Shortly afterward, Officer Taylor learned that appellant was wanted in Arkansas for murder. He went back to the area where he had seen appellant, found him, and arrested him.

Appellant had a loaded .25 caliber pistol with a full clip of ammunition in his pocket and had more ammunition in his possession. At trial, appellant did not object to any of officer Taylor's testimony, but did object to the admission of the black tee-shirt. The tee-shirt bears the following message: "If you love someone, set them free. If they don't come back, hunt them down and shoot them." Appellant objected to the admission of the tee-shirt on the grounds that it was not relevant to the murder and was unduly prejudicial.

There was no proof about how, when, or where appellant came into possession of the shirt. No proof indicated that he possessed it at the time of the murder. The proof was solely that he had it in his hand on July 26th, three days after the murder. There was no evidence that appellant had at any time loved the victim, or had set the victim free in any way, and there was no proof that appellant subscribed to the statement emblazoned on the shirt. In offering the shirt, the State contended that it was relevant to prove appellant's state of mind at the time of the murder. The trial court questioned the relevancy because of the lapse of time, but ultimately overruled appellant's objection. The prosecuting attorney argued extensively about the shirt in closing argument.

■■ In the context of this case, "relevant" means evidence that had any tendency to make the existence of appellant's premeditation and deliberation any more or less probable. *See* A.R.E. Rule 401 & Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1993). While evidence may be relevant even though it is somewhat remote in time from the occurrence of the crime, *see Hubbard* v. *State*, 306 Ark. 153, 812 S.W.2d 107 (1991), the tee-shirt had only a minimal tendency, at most, to prove appellant's state of mind at the time the victim was killed. Even though evidence might be relevant, it should be excluded when, upon objection, its probative value is substantially outweighed by the danger of unfair prejudice. *See* A.R.E. Rule 403; *Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979), *cert. denied*, 449 U.S. 852 (1980). Here, appellant's objection asked for a balancing of probative value against unfair prejudice under Rule 403 of the Arkansas Rules of Evidence. The standard of review of a trial court's weighing of probative value against unfair prejudice is whether the trial court abused its discretion. *Peters* v. *Pierce*, 314 Ark. 8, 858

S.W.2d 680 (1993); *Hubbard,* 306 Ark. at 161, 812 S.W.2d at 112. Even assuming that the emblazoned statement on the shirt had some marginal relevance, its effect was clearly prejudicial, and the trial court abused its discretion in allowing the shirt into evidence. In a comparable case, an Illinois appellate court ruled that it was error to admit a photograph of a defendant wearing a shirt with "Enjoy Cocaine" printed on it when the prosecution introduced the shirt to prove the defendant was a drug dealer. The court stated that even assuming such evidence was relevant, "[T]he prejudicial effect of the challenged evidence far out-weighed whatever probative value, if any, that such evidence may have had." *People* v. *Kannapes,* 567 N.E.2d 377, 380 (Ill. App. Ct. 1990). In sum, we hold that the trial court erred in admitting the tee-shirt in evidence.

■ The question then is whether we should reverse the guilt phase of the proceeding because of the erroneous eviden-tiary ruling made during that phase. When the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm. *Numan* v. *State,* 291 Ark. 22, 722 S.W.2d 276 (1987). We apply this standard of review to an evi-dentiary ruling in the guilt phase of capital cases. *See Johnson* v. *State,* 308 Ark. 7, 823 S.W.2d 800, *cert. denied,* 112 S. Ct. 3043 (1992). After a detailed review of the evidence, we hold that the evidence of guilt of capital murder was overwhelming, and, in view of that evidence, the error was slight. The over-whelming evidence of guilt is as follows.

Edna Burnett testified that she and her husband, Sidney Jethro Burnett, the victim, helped needy families and needy peo-ple. They operated through an association named Ministries Aflame. In 1987, appellant and his wife, who apparently were out-of-state at the time, learned of Ministries Aflame through a radio broadcast. They called the Burnetts and asked for assistance. The Burnetts provided work and a home for appellant and his wife and also provided funds that allowed appellant to have needed surgery. Three months later appellant's wife separated from him and went back to her original home in North Carolina. Appellant appeared distraught over his wife's leaving. He stayed in Arkansas until shortly after Christmas of 1987, when he left to also return to North Carolina.

Edna Burnett further testified that appellant returned to the Burnetts' home about one week before the July 23, 1991, murder of Sidney Burnett. At the time, appellant had a hitchhiker with him. He left abruptly, and Edna Burnett did not see appellant again until after the murder.

Sheriff Eddie King testified that after appellant's arrest, he went to Norman to bring appellant back to stand trial. While still in Norman, appellant told the Sheriff that the Burnetts had earlier accused him of burning one of their buildings and that Edna Burnett had talked his wife into leaving him. Appellant told the sheriff, "I'm your man" and "No one else was involved." He also said, "I'm tired of being treated like shit. I was going to take out people that fucked with me. It's like chaining up a dog and treating it like shit. Sooner or later he goes crazy." Other testimony revealed that the victim's pickup truck was recovered in Oklahoma with appellant's palm print on it.

A few days after being returned to Arkansas, while appellant was in jail, he said he had killed his brother in North Carolina and then had come to Arkansas. He said he wished he could have attended his brother's funeral "so he could piss on his grave."

The physical evidence was as follows. Two .25 caliber shell casings were found at the crime scene. A firearms-toolmark examiner testified that the .25 caliber pistol taken from appellant in Norman was the same pistol that imparted the markings on the casings found at the crime scene. Even more important, two bullet fragments were taken out of the victim, and the one fired into the victim's left back and the one fired into the victim's head were both fired from the pistol recovered from appellant. A dented can of hominy with blood on it was found at the crime scene. Four hundred and sixty dollars remained in the victim's billfold that was found under a chair by the corpse, and two hundred dollars in cash was found in a nearby bedroom.

When the sheriff first arrived at the Burnett home, he found Sidney Burnett's corpse with the head and shoulders propped up against a chair. His legs were on the floor. His hands were bound behind his back. He had handcuffs on his right arm, and his feet were bound together. Cloth was wrapped around his mouth. He

had bruises on the right side of his forehead and on his back. He had been stabbed in the back. He had been shot in the chest and just above the right ear. The former state medical examiner testified that when he received the corpse the hands were restrained behind the back with fiber filament tape and there were imprints from the restraint of the hands and legs. There was bleeding around the edges of the compression marks, and this indicated that the victim was alive while being restrained. The appellant's forehead was cut, probably when appellant struck the victim with the can of hominy, and a bruise in the back was consistent with the heel of a stomping shoe. The medical examiner testified that the victim was alive at the time these blows were struck because the areas bled and swelled. A stab wound in the left back was strong enough to go through the lung a distance of about four inches and to pierce the whole thickness of the muscles of the left mid back. The right side of the victim's face had been cut from the mouth to the ear, and the cut was so deep that it severed the entire thickness of the facial muscles. The medical examiner testified that Sidney Burnett was alive when this was committed because he inhaled blood from the facial cut into his lungs, and blood was circulating when the stab into the back was made. The victim was shot with appellant's .25 caliber pistol in the right chest and the right crown of the head. The high degree of bleeding indicated that Sidney Burnett was alive when shot.

The facts show that appellant knew the Burnetts and was familiar with their home. He went to their home with handcuffs, a .25 caliber pistol, and filament tape. He bound Sidney Burnett's hands, feet, and mouth. Over a period of time, appellant beat Burnett in the head, probably with a can of hominy; bruised his back, probably by stomping him with his heel; brutally stabbed him in the back; committed even more horrible torture when he cut the victim from mouth to ear; and ultimately shot him in the chest and in the head. Even though this description of butchery and torture sounds horrible, it does not fully describe the effect of macabre horror shown in the photographs of the crime scene. Appellant said, "I'm tired of being treated like shit. I was going to take out people that fucked with me. It's like chaining up a dog and treating it like shit. Sooner or later he goes crazy."

The evidence of a premeditated and deliberated murder is overwhelming, and, under such circumstances, the trial

error was harmless. Consequently, we affirm the conviction for capital murder reached in the first phase of the trial.

 We now address the assignments of error involving the penalty phase of the trial. In the first of these, appellant contends that the trial court erred in refusing to allow mitigating testimony by his jailer. The prosecutor objected to the testimony, stating that it concerned appellant's conduct *after* the commission of the crime and therefore was not a relevant mitigating circumstance. The trial court sustained the prosecutor's objection. The Attorney General correctly concedes the trial court's ruling was in error. The testimony should have been admitted. *Skipper* v. *South Carolina*, 476 U.S. 1 (1986); *Pickens* v. *State*, 292 Ark. 362, 730 S.W.2d 230, *cert. denied*, 484 U.S. 917 (1987).

 Another assignment of error in the penalty phase involves the State's proof that appellant had committed a "prior violent felony" as defined by Ark. Code Ann. § 5-4-604(3) (Repl. 1993). The State introduced proof that appellant had been convicted in North Carolina of the murder of his brother. In January of this year, the North Carolina Supreme Court reversed appellant's first degree murder conviction for that crime. The Attorney General again correctly concedes error on this issue. A death sentence that is predicated upon proof of the defendant's conviction of an unrelated prior violent felony must be vacated if the prior violent felony is, subsequent to the imposition of the death penalty, reversed. *Johnson* v. *Mississippi*, 486 U.S. 578 (1988); *Sanders* v. *State*, 308 Ark. 178, 824 S.W.2d 353 (1992). This court can perform the statutory harmless error analysis in the penalty phase only if "the jury found no mitigating circumstances." Ark. Code Ann. § 5-4-603(d) (Repl. 1993). In the present case, the jury unanimously found four mitigating circumstances.

The above two trial errors mandate that we vacate the sentence of death and remand for resentencing. Upon retrial, the trial court should not allow the prosecutor to mention the tee-shirt. In the remainder of the opinion we address those matters that were preserved for appeal even though one of them was not assigned as error in this appeal. *See* Ark. Sup. Ct. R. 4-3(h).

██ ██ The trial court, over appellant's objection, allowed a North Carolina policeman who had investigated the North Car-

olina case and who had witnessed the trial in North Carolina to testify about facts he found in his investigation and to repeat the testimony of witnesses from the North Carolina trial. The prosecutor commented that "it's not hearsay if he's testifying to sworn testimony that he heard at a trial." The trial court allowed the testimony. The ruling was erroneous. The declarant's testimony about the testimony in North Carolina trial was hearsay. A.R.E. Rule 801. In the penalty phase of a capital murder case, the defendant is not bound by the rules of evidence in showing mitigating circumstances, but the State is bound by the rules of evidence in proving aggravating circumstances. Ark. Code Ann. § 5-4-602(4) (Repl. 1993). Upon retrial, the prosecuting attorney should not be allowed to introduce hearsay evidence over appellant's objection.

We do not address three of appellant's assignments of error because either they were not preserved or they are not likely to arise again upon retrial. In the first of these arguments, appellant contends that the trial court erred in instructing the jury before the reception of the evidence at the penalty phase of the trial and by not repeating the instructions at the end of the evidence. The argument was not preserved with an objection or request for the trial court to repeat the instruction at the end of the trial. Further, the trial court is not likely to repeat the procedure. Second, appellant argues the trial court erred in admitting a report from the State Hospital because it contained hearsay, but the issue was not preserved with an objection. Third, appellant contends that the trial judge erred in answering questions by the jury, but there was no contemporaneous objection. In fact, from the abstract it appears that appellant agreed with the procedure used. An appellant cannot agree to the trial court's disposition of an issue and then on appeal argue that the trial court erred in doing what he agreed the trial court could do. *See Magar* v. *State*, 308 Ark. 380, 826 S.W.2d 221 (1992).

The final two assignments involve alleged errors in rulings on law. In the first of these appellant asserts that the capital murder statute is unconstitutional under the Eighth and Fourteenth Amendments because it fails to adequately narrow the class of persons eligible for the death penalty and permits arbitrary prosecutions. He contends that the section of the statute that defines capital murder as "causing the death of a person with

the premeditated and deliberate purpose of so doing," Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1993), is unconstitutional because it overlaps with the definition of first degree murder in Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1993). We have previously rejected this argument. *Buchanan* v. *State*, 315 Ark. 227, 866 S.W.2d 395 (1993); *Mauppin* v. *State*, 309 Ark. 235, 831 S.W.2d 104 (1992). We decline to overrule our cases.

In the second of these assignments appellant asserts that the "especially cruel or depraved" statutory aggravating circumstance is unconstitutionally vague or overbroad and is unconstitutional as applied in this case. Appellant made a pre-trial motion in which he argued that this statutory aggravating circumstance was violative of the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. When this issue came up at trial, the trial judge stated that appellant had not notified the Attorney General's office of his constitutional challenge to the statute. We make no holding on that statement. Appellant's counsel then withdrew the facial challenge to the statute and asserted that the State should be prohibited from using the "especially cruel or depraved" circumstance. The court allowed submission of this circumstance to the jury. It is one of the two aggravating circumstances which the jury found to be proved beyond a reasonable doubt. The other was that appellant had previously committed another felony involving violence. *See* Ark. Code Ann. § 5-4-604(3)&(8) (Repl. 1993).

When appellant withdrew the objection regarding the facial challenge to the statute, it was as if no objection had ever been made. *Nichols* v. *State*, 306 Ark. 417, 420-21, 815 S.W.2d 382, 384-85 (1991). Thus, appellant's argument is limited to whether the statute as applied to him was unconstitutional.

The previous statutory "especially heinous, atrocious, or cruel" aggravating circumstance was declared unconstitutional by this court because it was so vague that it violated the Eighth and Fourteenth Amendments' prohibition against cruel and unusual punishment. *See Wilson* v. *State*, 295 Ark. 682, 751 S.W.2d 734 (1988). The legislature rewrote the aggravating circumstance in 1991 and based the statutory definitions of "especially cruel manner" and "especially depraved manner" on the Arizona Supreme Court's limiting interpretation of its "especially heinous, cruel

or depraved" aggravating circumstance that had been found by the United States Supreme Court to pass constitutional muster. *See Walton* v. *Arizona*, 110 S. Ct. 3047 (1990).

In the present case, appellant's conduct in murdering Sidney Burnett falls within the statutory definition of in an "especially cruel manner." For the murder to have been committed in an especially cruel manner, the defendant must have intended to inflict mental anguish, serious physical abuse, or torture upon the victim prior to the victim's death, and mental anguish, physical abuse, or torture must have been inflicted. Ark. Code Ann. § 5-4-604(8)(B) (Repl. 1993). The manner in which the murder was committed qualifies as in an especially cruel manner based on either the serious physical abuse circumstance or the mental anguish circumstance. The statute defines "mental anguish" as "the victim's uncertainty as to his ultimate fate." "Serious physical abuse" is "physical abuse that creates a substantial risk of death or that causes protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ."

The evidence presented established that appellant intended to inflict serious physical abuse on Sidney Burnett and did so for a considerable period of time before killing him. The evidence also establishes that appellant intended to inflict mental anguish on the victim and did so prior to killing him. The statutory aggravating circumstance thus applies to appellant's conduct and was properly presented to the jury.

The conviction for capital murder is affirmed. The sentence of death is set aside, and the case is remanded to the trial court for resentencing in compliance with Ark. Code Ann. § 5-4-616 (Repl. 1993).