Richard Ottis CARMICHAEL *v.* STATE of Arkansas

CR 99-1121 12 S.W.3d 225

Supreme Court of Arkansas
Opinion delivered March 9, 2000

*William R. Simpson, Jr.*, Public Defender; *Jeffrey A. Weber*, Deputy Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. Appellant Richard Ottis Carmichael was convicted of capital murder and sentenced to life imprisonment. Pursuant to *Anders v. California*, 386 U.S. 738 (1976), and our Ark. Sup. Ct. R. 4-3(j)(1), his attorney has filed a motion to withdraw and a brief stating that there is no merit to the appeal previously filed with this court. Appellant's brief filed by counsel offers two rulings adverse to appellant and states that there are no meritorious grounds for appeal. The State agrees that there is no merit to appellant's appeal and appellant has not filed a *pro se* brief arguing additional points for reversal. Based on our review of the issues raised by appellant, together with our consideration of the entire record pursuant to Ark. Sup. Ct. R. 4-3(h), we conclude that there is no merit to the issues raised by appellant, and further that there are no errors with respect to rulings adverse to appellant. Accordingly, we affirm appellant's conviction and sentence, and grant counsel's motion to be relieved.

The State charged appellant with capital murder for causing the death of Ms. Terry Kirton, alleging that he murdered the victim with the premeditated and deliberated purpose of causing her death. The evidence presented at trial revealed that police officers responding to a call from appellant at his apartment on the morning of September 9, 1997, found the victim's partially covered body lying on the couch. Appellant told the officers that after a day of drinking together, he had gone to sleep and awoke to find Ms. Kirton unresponsive. He also volunteered that he had not killed her, a statement the officers found odd because her death was, at that time, considered only a "suspicious death," not a homicide.

Over the course of the investigation, detectives conducted several interviews with appellant about the circumstances of the victim's death. Initially, appellant told detectives that he had invited the victim over and they had gotten drunk and had sex several times

during the day. He said that the last sex act had taken place on the couch and he had then fallen asleep. When he awoke, he found blood on the floor and on the toilet seat and could not rouse Ms. Kirton.

After the medical examiner began his autopsy of the body, he notified police that Ms. Kirton had suffered trauma to the anal area and that her death appeared to be a homicide. Officers then sought and received consent to search appellant's apartment and discovered several items investigators described as "sexual devices," including a pair of table legs wrapped in electrical tape and a length of plastic pipe attached to a pair of boxer shorts. Upon further questioning, appellant admitted that the couple had anal sex and that he had requested the victim use one of the devices on him, but he denied having used any foreign objects on her. He denied that she was bleeding when he went to sleep, or that he had harmed her in any way.

Three days later, after the investigating officers received the medical examiner's report concluding that the cause of Ms. Kirton's death was homicide, appellant agreed to give police a third statement. He repeated his earlier version of meeting the victim in MacArthur Park and getting drunk and having "rough sex" with her in his apartment, but added that he had "lost control" during sex and had hit her, and that the two had fought. He also said that they had used the sexual devices found by the police on one another, including inserting one of them in the victim rectally. The medical examiner's report had revealed that the cause of death was strangulation.

### Sufficiency of the Evidence

The first adverse ruling we address is the trial court's denial of appellant's motion for a directed verdict. At the close of the State's case, appellant moved for a directed verdict, arguing that the evidence was insufficient to establish that he had acted with premeditation and deliberation. The trial court denied the motion, and, because we find no error in this ruling, we affirm.

■■ On appeal, we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. When we review a challenge to the sufficiency of the evidence, we will affirm the

conviction if there is substantial evidence to support it, when viewed in the light most favorable to the State. *Cobb v. State,* 340 Ark. 240, ___ S.W.3d ___ (2000). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. The evidence may be either direct or circumstantial. *Id.* Only evidence supporting the verdict will be considered. Circumstantial evidence can provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. Whether the evidence excludes every hypothesis is left to the jury to decide. Guilt may be proved in the absence of eyewitness testimony, and evidence of guilt is not less because it is circumstantial. *Id.*

 The evidence presented at trial was sufficient to support appellant's capital murder conviction. Pursuant to Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1997), a person commits capital murder if "with the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person." *Id.* Premeditated and deliberated murder occurs when it is the killer's conscious object to cause death and he forms that intention before he acts and acts as a result of a weighing of the consequences of his course of conduct. *See Davis v. State,* 251 Ark. 771, 475 S.W.2d 155 (1972). Premeditation is not required to exist for a particular length of time. *McFarland v. State,* 337 Ark. 386, 989 S.W.2d 899 (1999). It may be formed in an instant and is rarely capable of proof by direct evidence but must usually be inferred from the circumstances of the crime. *Id.* Similarly, premeditation and deliberation may be inferred from the type and character of the weapon, the manner in which the weapon was used, the nature, extent, and location of the wounds, and the accused's conduct. *Id.* One can infer premeditation from the method of death itself where the cause of death is strangulation. *Id.* (*citing Mulkey v. State,* 330 Ark. 113, 952 S.W.2d 149 (1997).

The autopsy revealed that the victim had numerous abrasions and bruises on her body and face, including a contusion to her skull and a laceration on her left ear. In addition, she suffered injuries to her liver and intestines consistent with having been hit or kicked. She also had extensive hemorrhages in her scalp tissue and in the inner aspects of her skull, which the medical examiner testified

were consistent with having been punched or slapped and were sufficiently serious to cause a loss of consciousness.

The autopsy further revealed extensive bruising, distention, and lacerations to the anus and rectum, as well as a four-inch-long tear of the intestines and bowel. This was consistent with appellant's statement to police with regard to the sexual devices that he had put the "big stick" up in her rectum "quite a ways." Lastly, the autopsy indicated evidence of strangulation, including abrasions around the neck and hemorrhaging of the neck muscles. The conclusion drawn from the autopsy was that the victim died as a result of strangulation, with blunt force injuries to her head, abdomen, and rectum. The medical examiner opined that it would have taken between one and five minutes to strangle Ms. Kirton to death, and he concluded that the head, stomach, and rectal injuries occurred prior to death.

■ We conclude that the testimony of the medical examiner was sufficient to support the jury's verdict of premeditation and deliberation as those terms are defined under Arkansas law. Despite appellant's testimony that he was too drunk to recall much of what occurred, the undisputed evidence was that the victim died of strangulation and that prior to her death she was savagely beaten and sodomized with one or more of several large objects. Furthermore, the testimony of the medical examiner established that it would take anywhere from one to five minutes to cause her death by strangulation, sufficient time in which appellant would have been able to reflect upon his actions and their consequences. The jury could easily have inferred from the numerous injuries to the victim's internal organs, as well as the autopsy evidence that she was strangled, that appellant acted with the purpose to cause her death. *Mulkey, supra.* The State introduced sufficient evidence to show that appellant acted with premeditation and deliberation when he killed Ms. Kirton, and, accordingly, the trial court's denial of appellant's request for a directed verdict was not erroneous.

*Constitutionality of Statutes*

The only other objection raised in this case was appellant's motion to dismiss the capital murder charge because of its asserted overlap with the first-degree murder statute, Ark. Code Ann. § 5–

10-102 (Repl. 1997). Appellant argued at trial that the same conduct was proscribed in both statutes, thus rendering the capital murder statute unconstitutionally void for vagueness because it failed to give adequate notice of the proscribed conduct, thus violating due process and depriving him of equal protection under the law. In his motion to the trial court, appellant requested that the capital murder charge be dismissed, or, in the alternative, that the trial court omit the jury instruction on first-degree murder as a lesser-included offense to capital murder, offering only second-degree murder instruction in its stead. The trial court denied appellant's motion.

■ The capital murder statute, Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1997), provides that a person commits capital murder if: "With the premeditated and deliberated purpose of causing the death of another person, he causes the death of another person. . . . ". *Id.* Murder in the first degree occurs when, "with a purpose of causing the death of another person, he causes the death of another person." Ark. Code Ann. § 5-10-102(a)(2)(Repl. 1997). On numerous occasions, we have held that there is no constitutional infirmity in the overlapping of the "premeditated and deliberated" *mens rea* in the capital murder statute and the "purposeful" *mens rea* in the first-degree murder statute. *Camargo v. State*, 327 Ark. 631, 940 S.W.2d 464 (1997)(*citing Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995); *Greene v. State*, 317 Ark. 360, 878 S.W.2d 384 (1994); *Sanders v. State*, 317 Ark. 328, 878 S.W.2d 391 (1994); *Buchanan v. State*, 315 Ark. 227, 866 S.W.2d 395 (1993); *Mauppin v. State*, 309 Ark. 235, 831 S.W.2d 104 (1992); *Van Pelt v. State*, 306 Ark. 634, 816 S.W.2d 607 (1991); *Smith v. State*, 306 Ark. 483, 815 S.W.2d 922 (1991); *White v. State*, 298 Ark. 55, 764 S.W.2d 613 (1989)). We have explained that it is impossible to avoid the use of general language in the definition of offenses, and that one or the other offense may be established depending on the testimony of witnesses. *Id.* We have consistently found no constitutional or other impediment to the discretion conferred by the "overlap" upon the State to choose between the two laws in charging a particular homicide. *Coulter v. State*, 304 Ark. 527, 804 S.W.2d 348, *cert. denied* 502 U.S. 829 (1991).

■ Appellant concedes in his brief that he was not prejudiced by any alleged lack of difference between the *mens rea* of the two statutes. The jury was instructed on the additional charge of mur-

der in the second degree, but found appellant guilty of capital murder, thus never reaching the question of the lesser-included offenses. *See* AMI Crim. 2d 302 ("If you have a reasonable doubt of the defendant's guilt on the charge of capital murder, you will then consider the charge of murder in the first degree"). We find no error in the trial court's denial of appellant's motion to dismiss on the basis of an asserted overlap between the capital murder charge and that of first-degree murder.

■ In conclusion, because we find this appeal to be without merit, counsel's motion to be relieved is granted and the judgment affirmed.

Affirmed.