PHILLIP T. WHITEAKER, Judge
Hunter Drexler appeals from the order of the Faulkner County Circuit Court denying his motion to transfer his case to the juvenile division of circuit court. On appeal, he argues that the circuit court erred in (1) its evaluation of the statutory factors required to be considered in a juvenile-transfer case and (2) refusing to set a reasonable bond. We affirm.
I. Background
Robert and Patricia Cogdell were murdered in July 2015. After the murders, law enforcement quickly developed Drexler, Conner Atchley, Anastasia Roberts, and Justin Staton[1] as suspects, theorizing that Drexler and Staton had met in juvenile detention where they conceived a plan to murder the Cogdells; steal their car, money, and credit cards; and run away. They enlisted the help of Atchley and Roberts to execute the plan.
On the day of the murders, Drexler removed several guns from his father's collection, cut off the ankle monitor he was required to wear as part of his juvenile probation, and met Staton, Atchley, and Roberts. The group went to the Cogdells' house, where they waited for Staton's grandparents to come home. Staton and Drexler shot Mr. Cogdell, who sustained six gunshot wounds to his torso and head; Mrs. Cogdell was shot seven times while she sat in the front seat of her car in the couple's garage. Drexler rolled Mr. Cogdell's body in a carpet, and he and Staton used a tractor to dump the Cogdells' bodies behind a barbed-wire fence on their Faulkner County property. Staton went *890 home following the shootings, where he was arrested later that evening. Drexler, Atchley, and Roberts fled to Texas, where they were apprehended the next day. At the time of the murders, Drexler was less than two months from his eighteenth birthday.
II. Procedural History
Drexler was charged as an adult in the Faulkner County Circuit Court with two counts of capital murder, two counts of aggravated robbery, two counts of theft of property, and two counts of abuse of a corpse. See Ark. Code Ann. § 9-27-318(c)(1) (Repl. 2009) ("A prosecuting attorney has the discretion to charge a juvenile, sixteen years of age or older, in the juvenile or criminal division of circuit court if the juvenile has allegedly engaged in conduct that, if committed by an adult, would be a felony."). Drexler filed a motion to transfer his case to the juvenile division of circuit court on September 12, 2016, two days before his nineteenth birthday. The circuit court held a multiday hearing on Drexler's motion pursuant to Arkansas Code Annotated section 9-27-318(e) and subsequently entered an order denying Drexler's juvenile-transfer motion. Drexler filed a timely notice of appeal and now presents the arguments set out above.
III. Standard of Review
In juvenile-transfer proceedings, the court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. Neal v. State , 2010 Ark. App. 744, at 6, 379 S.W.3d 634, 637.
Pursuant to Arkansas Code Annotated section 9-27-318(g), the circuit court shall consider all of the following factors in a transfer hearing:
(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;
(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;
(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against person or property, and any other previous history of antisocial behavior or patterns of physical violence;
(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;
(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;
(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and
(10) Any other factors deemed relevant by the judge.
*891 The circuit court is required to make written findings on all of the above factors. Ark. Code Ann. § 9-27-318(h)(1). Drexler, as the moving party, bore the burden of proving by clear and convincing evidence that his case should be transferred to the juvenile division of circuit court. Magana-Galdamez v. State , 104 Ark. App. 280, 291 S.W.3d 203 (2009). We will not reverse a circuit court's determination whether to transfer a case unless that decision is clearly erroneous. M.R.W. v. State , 2012 Ark. App. 591, 424 S.W.3d 355. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. Id.
IV. Denial of Drexler's Juvenile-Transfer Motion
The circuit court's order in this case addresses each of the statutory factors and discusses how it weighed them in deciding to deny Drexler's motion to transfer to juvenile court. In his first argument on appeal, Drexler challenges four of the circuit court's findings with regard to those statutory factors: (1) the seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court; (2) whether there are facilities or programs that are likely to rehabilitate him before his twenty-first birthday; (3) his previous history; and (4) the "group dynamic" of the alleged offense.
In his first subpoint, Drexler argues that the alleged offense-capital murder-should not automatically prohibit the transfer of a case to juvenile court. Our supreme court, however, has held that "the serious and violent nature of a capital murder charge, even if the minor is an accomplice, is sufficient to uphold the denial of a motion to transfer to juvenile court." Carroll v. State , 326 Ark. 882, 885, 934 S.W.2d 523, 525 (1996) (citing Bell v. State , 317 Ark. 289, 877 S.W.2d 579 (1994) ). Accordingly, we cannot say that the circuit court's consideration of the serious nature of the charges was inappropriate.
Morever, the circuit court here did not "automatically" deny Drexler's motion to transfer. Instead, the court considered the fact that Drexler had not only been charged with two counts of capital murder, but also with two counts each of aggravated robbery, theft of property, and abuse of a corpse. In addition to the serious nature of the capital-murder charge, the court also noted that aggravated-robbery charges "have been designated as an eight (8) on the Seriousness Level contained within the Arkansas Sentencing Standards Grid and offense Seriousness Rankings." Thus, because the circuit court's finding was not based solely and "automatically" on the capital-murder charge, we find no error on this issue.
Next, Drexler argues that the circuit court erred in finding that there were no facilities or programs that were likely to rehabilitate him before his twenty-first birthday. Here, he cites the testimony of Scott Tanner, the coordinator of the juvenile ombudsman division of the Public Defender Commission. Drexler notes that Tanner offered testimony about the kinds of services that would be available through the juvenile system, such as monitoring, probation, the possibility of imposing extended juvenile jurisdiction, and the existence of a facility at Dermott to house majority-aged male offenders. Based on Tanner's testimony, Drexler contends that this court should find that this factor weighs in favor of transfer to juvenile court.
We disagree. Tanner testified only generally about the kinds of services that were available; he did not testify specifically *892 about how Drexler would be benefitted by these services, as he had never met Drexler and had no knowledge of his amenability to treatment. Indeed, as the circuit court correctly noted, although Tanner testified that Drexler "could receive services through a commitment to DYS ..., Mr. Tanner was unable to state which services would be likely to rehabilitate the juvenile ." (Emphasis in original.)
In addition, there was evidence that Drexler-who was nineteen and a half years old at the time the circuit court's order was entered-had been offered previous opportunities to avail himself of the programs and facilities available through the juvenile-justice system but failed to take advantage of them. For example, Drexler's mother, Kimberly Ison, testified that Drexler had pled guilty to possession of drug paraphernalia and was placed on probation but that probation had been revoked numerous times. Laine McConnell, the juvenile drug-court coordinator of the Administrative Office of the Courts, testified that Drexler was in her drug court beginning in March 2015 but "didn't do well" in it. She explained that he failed multiple drug tests, failed to report for his intensive-probation program, and was held in contempt by the juvenile court several times. Thus, the circuit court's finding that there were no facilities or services that were likely to rehabilitate Drexler before his twenty-first birthday was not clearly erroneous.
Third, Drexler argues that his prior history should have militated in favor of transfer, since his only prior conviction was a misdemeanor for possession of an instrument of crime. He further cites testimony introduced at the hearing that he was "a good kid" who did not appear to have any violent or antisocial tendencies. He urges that this factor "should weigh heavily" in favor of transfer to juvenile court.
As set forth above, however, his prior history contains more than a mere misdemeanor conviction. The circuit court noted that Drexler's single juvenile adjudication, standing alone, might weigh in favor of transfer; however, the court concluded that it could not weigh this factor in isolation nor could it ignore the testimony and evidence admitted on the other factors. Drexler's arguments do not demonstrate that the circuit court clearly erred by denying the motion to transfer; rather, the circuit court simply weighed the evidence differently than Drexler desired. See, e.g. , Brown v. State , 2016 Ark. App. 254, 492 S.W.3d 126. The circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. D.D.R. v. State , 2012 Ark. App. 329, at 3, 420 S.W.3d 494, 496. Thus, Drexler's argument is insufficient to warrant reversal.
Finally, Drexler argues that the fact that the murders were "spearheaded" by Justin Staton and were committed with the assistance of Atchley and Roberts should have weighed in favor of transfer. He urges that the General Assembly "recognized that individuals acting alone are more adult-like and less able to be rehabilitated than those who succumb to peer pressure." Drexler cites no convincing authority in support of his argument, however, and this court could affirm for that reason alone. See, e.g. , Stewart v. State , 2010 Ark. App. 9, 373 S.W.3d 387 (noting that we cannot address arguments unsupported by convincing authority).
Even on the merits, however, we cannot find error in the circuit court's ruling. The circuit court made detailed findings about Drexler's involvement in the planning and commission of the murders, noting that Drexler and Staton had begun plotting to *893 kill Staton's grandparents when they were in juvenile detention together and had communicated via text messages following their release about how they were going to rob and kill the Cogdells. The court also cited the testimony of Drexler's father that Drexler removed guns from his home; testimony that when Drexler was apprehended, he had four of the victims' credit cards in his possession; and Staton's testimony that both he and Drexler had fired shots at Mr. Cogdell. The circuit court thus correctly concluded that the evidence was clear and convincing both that Drexler was part of a group in committing the alleged offenses and that he took individual action to assist in the commission of the alleged offenses. Based on the record before us, we cannot say that the circuit court's findings were clearly erroneous. See Flowers v. State , 2017 Ark. App. 468, at 5, 528 S.W.3d 851, 854 (noting appellate courts will not reweigh the evidence presented to the circuit court (citing Clem v. State , 351 Ark. 112, 90 S.W.3d 428 (2002) ) ). We therefore affirm the denial of Drexler's juvenile-transfer motion.
V. Denial of Motion for Reasonable Bond
In his second argument on appeal, Drexler contends that the circuit court erred in refusing to set him a reasonable bond. Both before and after the juvenile-transfer hearing, Drexler filed multiple motions for bond. Drexler and the State agreed that the testimony presented at the juvenile-transfer hearing would also be considered as applying to his motion for bond. After denying Drexler's motion to transfer, the circuit court subsequently entered an order in which it denied Drexler's request for bond, adopting its findings from the order denying the juvenile-transfer motion.[2] On appeal, Drexler argues that the circuit court's order was in error. We disagree.
A circuit court has discretion in setting a defendant's pretrial bond. See Foreman v. State , 317 Ark. 146, 875 S.W.2d 853 (1994). A criminal defendant has an absolute right before conviction, except in capital cases, to a reasonable bail. Reeves v. State , 261 Ark. 384, 548 S.W.2d 822 (1977) ; see also Perroni v. State , 358 Ark. 17, 186 S.W.3d 206 (2004) ; Duncan v. State , 308 Ark. 205, 823 S.W.2d 886 (1992). Article 2, section 8 of the Arkansas Constitution provides that "[a]ll persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when proof is evident or the presumption great." The State bears the burden of showing that "the proof is evident or the presumption great," and the mere fact that capital murder has been charged does not mean the offense is nonbailable. Buchanan v. State , 315 Ark. 227, 231, 866 S.W.2d 395, 397 (1993) ; Renton v. State , 265 Ark. 223, 577 S.W.2d 594 (1979).
Here, the State met its burden. Drexler's involvement in the planning and commission of the murders of the Cogdells was clearly demonstrated at the juvenile-transfer hearing by the following evidence: Drexler and Staton exchanged text messages in which they discussed stealing the guns and discussing "the plan"; Staton testified about the plotting and commission of the murders; Staton further testified that both he and Drexler had shot his grandfather and that Drexler had wrapped Mr. Cogdell's body in a rug and had helped dispose of it. Because the State presented sufficient evidence showing probable cause *894 that Drexler assisted in both the planning and commission of the Cogdells' murders, the circuit court did not abuse its discretion in denying Drexler's request for bond.
Affirmed.
Gladwin and Brown, JJ., agree.

Justin Staton is the grandson of Robert and Patricia Cogdell.

As part of its order, the circuit court also pointed out that Drexler, who had been wearing an ankle monitor as part of his juvenile probation, had cut that monitor off his leg just before participating in the murders and had subsequently fled to Texas.