DAVID M. GLOVER, Judge
Davin Allen was charged in Pulaski County Circuit Court with two counts of aggravated robbery, Class Y felonies, and two counts of theft of property by threat of serious physical injury, Class B felonies. He filed a motion to transfer his case to the juvenile division, which was denied by the circuit court. Allen has filed an interlocutory appeal of the denial of his motion to transfer, arguing the circuit court's decision was clearly erroneous. We affirm the denial of Allen's motion to transfer.
At the hearing on Allen's motion to transfer, Detective Julio Gil of the Little Rock Police Department testified that he responded to a report of a robbery in southwest Little Rock on July 31, 2016. The victims, Jose Gonzalez and Gustavo Martinez, both Hispanic males, told Detective Gil four black males had robbed them at gunpoint, taking their cell phones and wallets. On August 8, Mr. Gonzalez brought his new phone to the police station to show the police that on his iCloud there were pictures of people he did not know, including pictures of the people who had robbed him. Through these pictures, Detective Gil identified three suspects, and Mr. Gonzalez, using a photo spread, positively identified Allen and Brian Welch as two of the persons who had robbed him and tentatively identified Keith Harris as a third suspect. Detective Gil was unable to get Mr. Martinez to come to the police station, explaining at the hearing that many people in the Hispanic community were unwilling to cooperate with the police in fear of being deported.
Gil stated Brian Welch gave a statement admitting that he, Allen, and Harris followed the victims in their vehicle until it stopped, at which time Allen approached the vehicle holding a gun, and Harris and another person known to Welch only as Johnathan got the two victims out of the vehicle. Welch admitted he took a cell phone from the vehicle.
Talisa Obi, Allen's aunt, testified in Allen's defense. She stated that Allen, who was currently attending Central High School, had lived with her from the beginning of school last year until he was arrested; prior to that, Allen had lived with his mother and attended Hall High School. Obi explained Allen had been retained *229 twice in school; his behavior changed after transferring to Central; he lost interest in sports; and he began to associate with a "different type of crowd." Obi testified Allen had been diagnosed with oppositional defiant disorder (ODD) and was prescribed medication but had stopped taking it; he had also received some outpatient therapy. Allen's mother, Obi's sister, could not be in court for the hearing due to training requirements associated with her new job, but Obi said her sister had attempted to get Allen help from school counselors and juvenile services, only to be told there was nothing they could do because he had not committed any crimes.
On cross-examination, Obi explained she is not Allen's guardian, but had taken him into her care so her husband could be a father figure to Allen and to get him out of his previous neighborhood. She agreed no one had petitioned the juvenile court for a family-in-need-of-services (FINS) case to be opened; she said no one had mentioned FINS as an option; and she could not do anything because she is not Allen's legal guardian. Obi acknowledged Allen had three other cases currently pending in juvenile court, but she stated Allen had never been "convicted" of a crime in the juvenile system or placed on probation.
Kantris Oliver, an employee of the Division of Youth Services (DYS), testified DYS could offer Allen mental-health services and life-adaptive skills, as well as individual, group, and family counseling. Oliver was familiar with ODD, stating it was a common diagnosis for DYS youth; DYS would be well suited to treat Allen for ODD; and there was a "good chance" DYS programs could rehabilitate Allen by the time he turned twenty-one. However, Oliver admitted she had not had an opportunity to interview Allen or anyone in his family and did not know anything about his particular needs except the information she had been provided by the public defender.
A letter from Allen's mother was entered as an exhibit in which Janice Obi explained she was unable to be in court with Allen due to work. She stated Allen was a "great kid" who had been involved in sports but began hanging out with boys from his school and making poor choices, such as skipping school and letting his grades drop. She explained Allen had ODD and was taking medication. When she was unable to get help from the juvenile-detention center, she sent Allen to live with her sister. She wrote that she was willing to have Allen in her care under house arrest; however, she stated that she knew he did not play a part in the aggravated robbery for which he stood accused. Her plan if Allen was released was to place him in Job Corps to continue his education and training for a trade.
On May 1, 2017, the circuit court entered an order denying Allen's motion to transfer. Allen appeals the decision, arguing it is clearly erroneous.
Arkansas Code Annotated section 9-27-318 (Repl. 2015) governs the transfer of criminal cases to juvenile court. Subsection (g) of the provision sets forth the ten factors a circuit court is required to consider in a transfer hearing:
(g) In the transfer hearing, the court shall consider all of the following factors:
(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;
(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;
(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;
*230 (4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;
(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;
(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;
(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;
(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;
(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and
(10) Any other factors deemed relevant by the judge.
The statutory language is clear. The circuit court shall make written findings on all the factors set forth in subsection (g) of this section. Ark. Code Ann. § 9-27-318(h)(1). Our case law further explains its application. The State is not required to introduce proof of each factor, and the circuit court does not have to give equal weight to each factor. Flowers v. State , 2017 Ark. App. 468, 528 S.W.3d 851. The movant bears the burden of proving by clear and convincing evidence that his case should be transferred from the criminal division to the juvenile division of circuit court. Drexler v. State , 2018 Ark. App. 95, 538 S.W.3d 888. On appeal, we will not reverse a circuit court's decision denying a motion to transfer unless it is clearly erroneous; a finding is clearly erroneous when, after reviewing the evidence, our appellate courts are left with a firm and definite conviction that a mistake was made. Id. Appellate courts will not reweigh the evidence presented to the circuit court. Flowers, supra.
Here, the circuit court made findings regarding each factor listed in section 9-27-318(g). It found that the offenses with which Allen was charged were serious, involved violence, and were committed in a premeditated manner against persons and property, and the nature of the offenses and society's protection would favor prosecution in the criminal division of circuit court. The circuit court further found Allen had acted as part of a group; Allen's culpability in the commission of the offenses appeared to be equal to that of his co-defendants; and Allen had three cases pending in juvenile court that had not yet been adjudicated. Additionally, the circuit court found Allen's home environment was poor, he had lost interest in sports, he had been associating with people his family found unacceptable, and he lacked a male role model when he lived with his mother. The circuit court noted Allen's date of birth is March 14, 2000; therefore, he was sixteen years and four months old at the time the offenses were committed and was seventeen at the time of the transfer hearing.
Although the circuit court recognized the difference in the brain functioning of juvenile and adult offenders, weighing the efficacy of juvenile programs and services against the legitimate concerns of protecting society from violent offenders, the circuit court was "concerned with the sufficiency of the resources available to the Juvenile Division and finds that the programs in their current form would fail when applied to the circumstances of this case." Even though the circuit court found *231 it was "beyond dispute" Allen and his family were in need of services, it ultimately found the programs and facilities were not likely to rehabilitate Allen prior to his twenty-first birthday. The circuit court also found the evidence presented at the transfer hearing indicated Allen was targeting Hispanic males due to their reluctance to contact authorities; Allen was behind two years in school; he had been diagnosed with ODD; his mother was unable to attend the hearing due to her job, which she must keep to support her family; and his mother had sought help but had been told that there was nothing that could be done unless Allen had been charged with a crime or adjudicated delinquent.
The circuit court found its decision came down to balancing the seriousness of the offense against the protection of society. The circuit court noted that it was presented with a single mother whose teenage son had behavioral issues; she had asked authorities for help multiple times without success; and she was unable to protect her son from "falling prey to his own impulses and surroundings." The circuit court found Allen was attempting to "fit in" with his peers and gain attention by engaging in behavior designed to garner this attention, but, "[p]ointing a firearm at someone, and robbing them of both their property and sense of security is shocking and unacceptable behavior for a child or an adult."
Allen's sole argument is that the testimony of Talisa Obi and Kantris Oliver, taken together, establishes he has the potential to be rehabilitated by DYS services available to him if his case is transferred to juvenile court, and the circuit court clearly erred in denying his motion to transfer. We do not agree. Other than setting forth the testimony of Obi and Oliver again, Allen fails to explain how the circuit court erred in denying the motion to transfer. Oliver testified in general terms as to what type of programs and services were available at DYS, but she also admitted she knew virtually nothing about Allen's particular needs because she had not interviewed him. The circuit court was concerned DYS services were insufficient resources to successfully rehabilitate Allen under the circumstances. Allen has been charged with two counts of aggravated robbery and two counts of theft of property by threat of serious physical injury. A juvenile may be tried as an adult based solely on the serious and violent nature of the offense. C.B. v. State , 2012 Ark. 220, 406 S.W.3d 796. The circuit court found pointing a firearm at people and robbing them of their property and security was shocking and unacceptable behavior for either a child or an adult. Furthermore, Allen had three pending cases in juvenile court at the time of the motion to transfer. Based on these facts, we cannot say the circuit court's denial of Allen's motion to transfer was clearly erroneous.
Affirmed.
Klappenbach and Hixson, JJ., agree.